THE PEORIA, DECATUR AND EVANSVILLE RAILWAY
COMPANY

V.

CHRISTIAN SCHILLER.

1. DEFECTIVE FENCE—RAILROAD COMPANY NOT LIABLE FOR DAM-
AGES TO CROPS BY STOCK GETTING THROUGH THE SAME.—The statute re-
quiring railroad companies to fence their tracks is not for the purpose of
protecting adjoining land owners from damage that might be done by stock
getting on the right of way and thence to the adjacent crops. The object
of the statute was to prevent stock from coming on the railroad and be-
ing injured, and to prevent accidents which would likely occur if stock
were not fenced away from the track, thereby promoting the safety of pas-
sengers and employes on the trains.

2. CONSTRUCTION OF STATUTE.—There is a special requirement in the
statute, the plain object of which is to prevent stock from getting on the
track, and for a failure to comply with it, a special liability is provided in
respect to one particular thing, viz.: the damages which may be done by
the agents, engines or cars of the corporation to such stock so getting on
the road, and providing that when this requirement is complied with, liabil-
ity in respect to such damages shall be dependent upon negligent or willful
conduct. The manifest purpose of the law is to enforce this special duty
by attaching this special liability, and had there been a purpose to create a
liability beyond that specified, very different terms would have been em-
ployed.

3. FAILURE TO BUILD CATTLE-GUARDS.—The requirement to build cat-
tle-guards at road crossings is not different from that to build fences along
the track, and a failure to build such cattle-guards imposes no greater or
other liability than the failure to fence.

4. REMOVAL OF FENCES WITHOUT NOTICE TO LAND OWNER.—Where it
was claimed that there was a failure to maintain cattle-guards at the road
crossing, that the wing fences of appellee were improperly removed and
that the railroad company were liable because of an unwarrantable change
of the situation without notice to the land owner, *quære*, whether there are
circumstances in the present instance, which would render the company in
the proper form of action liable for the injury sustained by the land owner.

APPEAL from the Circuit Court of Jasper county; the Hon.
CHANCERY S. CONGER, Judge, presiding. Opinion filed April
13, 1883.

Messrs. STEVENS, LEE & HORTON, for appellant; cited R.
S. 1874, Chap. 8; R. S. Chap. 114, § 48.

It was not the design of the statute that railroad companies should be compelled to protect the crops of adjoining land owners against cattle or hogs wrongfully upon their right of way: Wabash R. R. Co. v. Brown, 5 Bradwell, 590; Redfield on Railways, 490; Shearman & Redfield on Negligence, § 469; Buxton v. U. E. R'y Co. 3 Law Rep. 32; Langlois v. Buffalo R. R. Co. 19 Bart. 364; Clark v. H. & St. Jo. R. R. Co. 36 Mo. 218.

An instruction based upon the belief of the jury without reference to the evidence is erroneous: Ewing v. Runkle, 20 Ill. 448; Fame Ins. Co. v. Mann, 4 Bradwell, 485.

Messrs. FITHIAN & HEAP, for appellee; that case lies either for negligence or non-feasance, cited 1 Chitty on Pleadings, 132.

In the absence of any motion setting out the causes for a new trial the court must presume that appellant was satisfied with the verdict of the jury and judgment of the court: O. O. & F. R. V. R. R. Co. v. McMath, 1 Bradwell, 429; St. L. A. & T. H. R. R. Co. v. Thomas, 85 Ill. 464; Emory v. Addis, 71 Ill. 274; Jones v. Jones, 71 Ill. 562.

Where substantial justice has been done, a new trial will not be granted, although the court erred in some of its instructions: Hewitt v. Jones, 72 Ill. 218.

WALL, J. This was a suit commenced before a justice of the peace and removed by appeal to the Circuit Court of Jasper county, where the plaintiff recovered a judgment, from which the railroad company prosecutes an appeal to this court. It appears from the evidence that the railroad was built across the plaintiff's land; that along the north side of this land there was an ordinary road that had been in common use for many years; that the railroad company put in cattle-guards at the crossing of this road and the plaintiff built wing fences up to the cattle-guards, thus protecting his crops; that in December, 1881, some four or five years after the railroad was built, the company erected a barbed wire fence along the right of way through the plaintiff's land, and upon the sup-

position that the road before mentioned was not a public one, extended the wire fence across it, and there being no longer a road crossing at this point, removed the cattle-guards and wing fences, and in consequence of the wire fence not turning hogs, the plaintiff's crops were injured, the hogs getting through the wire fence where it crossed the old road and passing thence to the plaintiff's fields.

It is urged by appellant that the statute requiring railroad companies to fence their tracks is not for the purpose of protecting adjoining land owners from damage that might be done by stock getting on the right of way and thence to the adjacent crops, but that the object of the legislature was to prevent stock from coming on the railroad and being injured, and to prevent accidents which would likely occur if stock were not fenced away from the track, thereby promoting the safety of passengers and employes on the trains.

We have no doubt this is the true construction. The statute requiring railroad companies to fence their tracks provides that such corporations shall within the six months after the line is open for use erect and maintain on both sides of the track fences " suitable and sufficient to prevent cattle, etc., from getting on such railroad," * * * and shall construct at all road crossings " cattle-guards suitable and sufficient to prevent cattle, etc., from getting on such railroad," and that " when such fences or cattle-guards are not made as aforesaid, or when such fences or cattle-guards are not kept in good repair, such corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation to such cattle, etc., thereon; but when such fences and cattle-guards have been duly made and kept in good repair such railroad corporation shall not be liable for any damages unless negligently or willfully done."

Here is a special requirement, the plain object of which is to prevent stock from getting on the road and for a failure to comply with it a special liability is provided in respect to one particular thing, viz.: the damages which may be done by the agents, engines or cars of the corporation to such stock so getting on the road, and providing that when this require-

ment is complied with, liability in respect to such damages shall be dependent upon negligent or willful conduct.

It would seem that the manifest purpose of the law is to enforce this special duty by attaching this special liability, and had there been a purpose to create a liability beyond that specified very different terms would have been employed.

This act has been in force in substantially the same form since 1855, and has been the subject of consideration and discussion in our Supreme Court very frequently in cases brought to enforce liability for killing or injuring stock. That court have upheld it as constitutional upon the ground that it was a proper exercise of the police power—O. & M. R. R. Co. v. McClelland, 25 Ill. 145—and have held, in view of the purpose of the act, that where an unfenced road is owned by one corporation, and trains run over it by another, either corporation is liable for stock injured on the track by the engines or cars of the operating company. The provision fixing liability for stock injured by failure to fence has often been discussed and sustained as a penalty properly devised in order to secure compliance with this proper and necessary police regulation, but we have been referred to no case, and are aware of none, where it has been held, or intimated that there was any other penalty or liability other than that specified.

Redfield, in his work on Railways, 2d ed. 374, says that where the statute makes them (railroad companies) liable for all injuries to cattle, etc., by their agents or instruments until they fence their roads, the liability extends only to the owners of the cattle, and this liability is the only one incurred. And it is said by the same author that such companies are not liable to their own servants for injuries happening to them in consequence of a want of such fences. It was so held in Langilois v. B. & R. R. R. Co. 19 Barb. 364, and in Wabash R'y Co. v. Brown, 5 Bradwell, 590; Shearman and Redfield on Negligence, Sec. 469.

If the omission to comply with this statute would not render a railroad company liable to an employe for an injury resulting from a failure to maintain the fence, it is difficult to see on what ground to place liability to an adjoining land

owner for an injury to crops in respect to which the railroad company is under no duty, common law or statutory.

The Supreme Court of Missouri in the case of Clark v. H. St. Jo. R. R. Co. 36 Mo. 218, had occasion to pass upon the same question upon an act of that State similar to ours, and held in clear terms that the scope of the legislation is the protection of the railroad, the safety of passengers and trains and the prevention of accidents and injuries to stock straying on the track; that the company is required to fence the road in and to fence stock out, and is not required to enclose the farms or fields of other land owners for their benefit or for any other purpose; that it is not to be inferred that the company incurs any liability to such land owners by reason of failing to make and maintain such fences except for damages done to stock coming on the track.

We do not understand counsel for appellee to insist very seriously upon a different view of the statute, but he contends that there was a failure to maintain the cattle-guards at the road crossing, that the wing fences of the appellee were improperly removed and that the defendant company was liable because of an unwarrantable change of the situation without notice to the land owner. Possibly there are circumstances which would render the company liable in the proper form of action for the injury that has been sustained by the land owner in the present instance.

It is not necessary to determine whether there was a public highway at this point or whether there was a violation of the statute in removing the cattle-guards, since the requirement to build these at road crossings is not different from that to build fences along the track, and a failure to do so imposes no greater or other liability than does the failure to fence.

.At the instance of appellee the court gave the following instruction:

" The court instructs the jury for the plaintiff that the law requires the railway company to keep good and sufficient cattle-guards at all public road crossings; and if the jury believe that the railway company fenced across a public road, and after so fencing removed their cattle-guard, and that by reason of

such removal and the insufficiency of the company's fences,. stock trespassed upon the crops of plaintiff and he was there- by damaged, the jury should find for plaintiff."

This clearly predicates liability for the injury to the crops upon the assumed failure to comply with the statute, and in the view we take of the law, is erroneous.

The verdict of the jury was no doubt due to this instruction, and the judgment must therefore be reversed and the cause remanded.

Reversed and remanded.