LEE MONTAGUE, Plaintiff-Appellant, *v.* GEORGE J. LONDON MEMORIAL HOSPITAL *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-172

Opinion filed November 13, 1979.

George C. Pontikes and Walter J. Starck, both of Foss, Schuman & Drake, of Chicago, for appellant.

Winston & Strawn, of Chicago (John L. Huff, of counsel), for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Lee Montague filed a complaint for damages based upon alleged violations of section 5—3 of the Illinois Mental Health Code of 1967 (Ill. Rev. Stat. 1975, ch. 91½, par. 5—3)[1] (hereinafter "Mental Health Code"), which, on motion of defendants George J. London Memorial Hospital and Marshall Falk, was dismissed, resulting in this appeal. The underlying issue presented for review is whether plaintiff's action is barred by the statute of limitations. For reasons hereinafter set forth, we reverse and remand.

---

[1] The Mental Health Code of 1967 was repealed effective January 1, 1979, and replaced by the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat., 1978 Supp., ch. 91½, pars. 1—101 *et seq.*). All provisions of the 1967 Code relevant to this appeal have been retained in substance under the new Code, section 5—3 having been renumbered to section 3—403.

Plaintiff's complaint, filed March 14, 1977, alleged that defendant hospital owned, operated and maintained a licensed private hospital under the name of Fox River Hospital for the care, treatment, detention and training of persons who were mentally retarded or in need of mental treatment; or, in the alternative, that defendant hospital was the successor in interest to the said Fox River Hospital. Defendant Marshall Falk was alleged to have been employed at the Fox River Hospital as medical director and to have supervised and controlled admission and discharge procedures. Plaintiff claims that on or about April 5, 1974, he was voluntarily admitted to the hospital and on April 11, 1974, he properly executed and delivered a five-day notice pursuant to section 5—3 of the Mental Health Code, notifying defendants of his intention to leave. Section 5—3 provides as follows (Ill. Rev. Stat. 1975, ch. 91½, par. 5—3):

> "Each voluntary admittee shall be allowed to leave the hospital within 5 days, excluding Saturdays, Sundays and holidays after he gives any professional staff person written notice of his desire to leave, unless prior to leaving the patient withdraws such notice by written withdrawal, or unless within said five days a petition and the certificates of two examining physicians, at least one of whom shall be a psychiatrist, are filed with the court, and the court shall order a hearing pursuant to Section 8—8. The patient may continue to be hospitalized pending a final order of the court in the court proceedings."

Notwithstanding this notification, defendants allegedly failed and refused to allow plaintiff to leave within five days after the receipt of notice or to cause a petition and two certificates of examining physicians to be filed with a court of proper jurisdiction in order to sustain his continued hospitalization as required by statute. Plaintiff alleged further that defendants kept him as a patient against his will for approximately four months after submission of the five-day notice. All the foregoing acts are claimed to have constituted a violation of section 5—3.

As a result of defendants' actions plaintiff claims that he was wrongfully and improperly deprived of his freedom and liberty for the indicated time period; was caused to be subjected to unnecessary, painful, discomforting and harmful treatment and medication; was prevented from conducting his business and personal affairs, and suffered considerable loss of income; incurred substantial medical bills and obligations; sustained great pain and suffering; suffered great mental and emotional anguish and trauma; and otherwise suffered and sustained great damages and injury. Plaintiff further alleged that defendants acted in the foregoing respects in wilful, wanton, malicious and wicked disregard of his rights.

Defendants' section 48(e) motion to dismiss (Ill. Rev. Stat. 1975, ch.

110, par. 48(e)) stated that the applicable two-year statute of limitations for plaintiff's action was to be found in section 14 of "An Act in regard to limitations" (Ill. Rev. Stat. 1975, ch. 83, par. 15) (hereinafter "Limitations Act"), specifically because the gist of the action is common law false imprisonment. Defendants reasoned that since plaintiff's complaint was not filed until almost two years and 10 months after the alleged wrong was committed, his cause of action was forever barred. Plaintiff's response to defendants' motion contended that the action was based upon statutory violation and liability therefor emanated from section 5—3 of the Mental Health Code rather than false imprisonment. He concluded that since his cause of action was based upon statutory violation, it constituted a "civil action not otherwise provided for" under section 15 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 16), to which a five-year limitation period is applicable, and his action, therefore, is not barred.

The trial court, on September 21, 1977, dismissed with prejudice plaintiff's cause of action upon the ground that it was forever barred by the "applicable two-year statute of limitations." From this order plaintiff appeals.

Plaintiff on appeal predicates his cause of action upon defendants' violation of section 5—3 of the Mental Health Code, notwithstanding the fact that some of the damages and injuries he allegedly sustained are similar to those typically suffered in false imprisonment cases. He urges that since some of the alleged damages and injuries sustained by him are factually unrelated to a false imprisonment claim, such as unnecessary, painful and harmful medical treatment and medication as well as the amassing of substantial bills and obligations, his action must be treated as directly related to and as a consequence of the claimed statutory violation. He insists that because his damages and injuries were sustained by virtue and as a direct consequence of the primary statutory violation, section 15 of the Limitations Act must be applied, which contains a limitation period of five years, relying upon *Ohio & Mississippi Ry. Co. v. Erwin* (1892), 45 Ill. App. 558; *Mueller v. Bittle* (1943), 321 Ill. App. 363, 53 N.E.2d 56 (abstract); *Baker v. F&F Investment* (7th Cir. 1970), 420 F.2d 1191; and *Wakat v. Harlib* (7th Cir. 1958), 253 F.2d 59.

■■ The threshold issue to be resolved is whether a violation of section 5—3 of the Mental Health Code sanctions plaintiff's cause of action without specific statutory authority. That private rights of action may be founded upon violations of statutes absent such authority is well settled, and are sometimes based upon public policy factors. (See *e.g., Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 29-30, 392 N.E.2d 154, and cases therein collated.) The public policy reflected in the Mental Health Code is perceived through its articulation of serious concerns in weighing the interests between allegedly mentally ill individuals and of society of

which he is a part. The Mental Health Code recognizes the fundamental liberty interest of the person facing commitment thereunder, at the same time providing beneficial treatment and care consistent with protecting both him and the public. These considerations were recently set forth in *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273. There, the supreme court established the appropriate burden of proof necessary in order to sustain the involuntary commitment of an individual and reviewed many provisions of the Mental Health Code. Among the provisions analyzed were those which furnished extensive safeguards clearly intended to minimize the possibility of confinement of persons for whose protection, or for the protection of others, confinement is unnecessary, including procedures for review, the right to counsel and requests for discharge. (67 Ill. 2d 544, 550-52.) Section 5—3 with which we are here concerned was not involved in *Stephenson*; however, in concluding that the standard of proof beyond a reasonable doubt was too stringent, but that clear and convincing evidence was appropriate, the supreme court weighed the differences between laws of liberty relative to a criminal conviction and those occasioned by involuntary commitment. Emphasis was placed upon the fact that, unlike criminal law, the Mental Health Code provided procedures for the speedy release of one no longer in need of mental treatment upon his own application. 67 Ill. 2d 544, 555.

The same legislative concern is found in the provisions of section 5—3 which require any person who has voluntarily committed himself for treatment to be released within five days after presenting a written request to the hospital to do so. This is apparent not only from the standpoint of liberty interests, but also from the obvious legislative encouragement to individuals to voluntarily present themselves for treatment and accept the concomitant, incidental infringement upon their personal liberties in return for the assurance that when voluntary admittees seek discharge, they must be released within five days, unless their conditions do not permit, where appropriately demonstrated in compliance with statute. So strong is this assurance of release that it has been variously construed as "guarantee[ing] a voluntary patient the right to leave the hospital * * *" (*In re Clement* (1975), 34 Ill. App. 3d 574, 577, 340 N.E.2d 217) and as "* * * an absolute right to leave [the hospital]." *People v. Ealy* (1977), 49 Ill. App. 3d 922, 938, 365 N.E.2d 149.

Such public policy considerations are material when analyzing statutory provisions with respect to ascertaining whether they may support civil actions such as that pursued by plaintiff in the present case. In a recent case, *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, the supreme court considered the legitimacy of a civil action postulated upon the violation of public policy identified in the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et*

*seq.*), but, as in the instant case, not specifically articulated by the statute itself. The supreme court noted that the system of rights, remedies and procedures contained in the Act substituted for previously existing common law rights and liabilities between employers and employees and concluded that in light of its beneficent purpose, the Workmen's Compensation Act is a humane law of a remedial nature which both protects employees and promotes the general welfare of the State, thereby authorizing the cause of action based upon retaliatory discharge to proceed. (74 Ill. 2d 172, 180-81. See also *Heimgaertner v. Benjamin Mfg. Co.* (1955), 6 Ill. 2d 152, 155, 128 N.E.2d 691.) We find in the public policy expression of concerns for individual liberty and the advancement of society's interests contained in the Mental Health Code an analogous basis for recognizing the right of one who pursues the procedures set forth in section 5—3 to assert a civil action in damages as a remedy for violation of those statutory procedures. To hold otherwise would ignore the underlying public policy, disregard the clear legislative intent, facilitate questionable hospitalizations of those unable to assert for themselves their statutory and constitutional right to liberty, and advise the putative voluntary patient that the statutory assurance of release is transient, if not evanescent.

Defendants maintain that no statutory cause of action should be recognized for several reasons. First, the nature of the action, and consequently the applicable limitation period, is based upon the particular injury sued for or upon the "obligation out of which the action grows," not upon the form of the particular action named. Cited are *Handtoffski v. Chicago Consolidated Traction Co.* (1916), 274 Ill. 282, 286, 113 N.E. 620; *Schreiber v. Eastern Airlines, Inc.* (1976), 38 Ill. App. 3d 556, 558, 348 N.E.2d 218; and *Seymour v. Union News Co.* (1953), 349 Ill. App. 197, 200, 110 N.E.2d 475. As we have recognized, however, the "obligation out of which the action grows" in the case *sub judice* is the statutory requirement of release from hospitalization upon written notice, in consonance with the foregoing cases. Defendants argue that even if the form of plaintiff's claim is cognizable, such alleged wrongful detention by a hospital has been traditionally recognized in common law theories of false imprisonment, assault or battery, seeking support from *Marcus v. Liebman* (1978), 59 Ill. App. 3d 337, 375 N.E.2d 486; *Felton v. Coyle* (1968), 95 Ill. App. 2d 202, 238 N.E.2d 191; and *Cox v. Rhodes Avenue Hospital* (1916), 198 Ill. App. 82 (abstract). Therefore, plaintiff's injuries are properly classified as false imprisonment, assault, battery or medical malpractice, and are subject to the two-year statute of limitations. In none of the last cited cases was a statutory cause of action articulated, however, as it is in the present case. We find no basis in the authorities cited by defendants upon which to preclude plaintiff's pursuance of a statutory

right simply because somewhat similar common law actions utilized by others under completely different factual circumstances may also be available to him.

■ Defendants argue that absent an expression of specific legislative intent to create an independent cause of action for damages arising from a violation of the statute, the exclusive remedy is to be found in that type of proceeding provided by the common law, to which the two-year statute of limitations applies, relying upon *Kosicki v. S.A. Healy Co.* (1942), 380 Ill. 298, 302, 44 N.E.2d 27; *Reid v. Chicago Rys. Co.* (1923), 231 Ill. App. 58; and *Ohio & Mississippi Ry. Co. v. McGehee* (1893), 47 Ill. App. 348, 351. The precise issue of whether a statutory right of action was governed by sections 14 or 15 of the Limitations Act was neither raised nor decided by any of the foregoing authorities. Cases in which that issue has been considered adhere to the general rule that a statutory right of action is a "civil action not otherwise provided for" under section 15 of the Limitations Act, and such actions must therefore be commenced within the five-year period therein provided. (*Parmelee v. Price* (1904), 208 Ill. 544, 559, 70 N.E. 725; *Blakeslee's Storage Warehouses, Inc. v. City of Chicago* (1938), 369 Ill. 480, 485, 17 N.E.2d 1; *Lyons v. County of Morgan* (1942), 313 Ill. App. 296, 298, 40 N.E.2d 103; *People ex rel. Powles v. County of Alexander* (1941), 310 Ill. App. 602, 604, 35 N.E.2d 92; *Mueller v. Bittle* (1943), 321 Ill. App. 363, 53 N.E.2d 56 (abstract).) Plaintiff also relies upon civil rights act violation cases by analogy as examples of how section 15 has also been so construed in the Federal courts, citing *Baker v. F&F Investment*; *Wakat v. Harlib*; *Amen v. Crimmins* (N.D. Ill. 1974), 379 F. Supp. 777; and *Holmes v. Silver Cross Hospital* (N.D. Ill. 1972), 340 F. Supp. 125. He urges that although plaintiffs in civil rights actions may have been falsely arrested or imprisoned, their causes of action were directly based upon and arose out of violations of the civil rights act; the existence of any false arrest or imprisonment was merely consequential thereto. We believe the cases and analogies drawn from them are illuminating and helpful in determining this issue. The action pursued by plaintiff here is not one which can be accurately described as typically a false imprisonment or assault and battery claim. Nor, from the pleaded facts, is it necessarily a hospital malpractice case which would invoke section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1), as contended by defendants.[2] It proceeds, rather, from the statutory

---

[2] This theory was not raised in the trial court and cannot be argued on review; however, had such a defense been raised below, an opportunity could then have been afforded to plaintiff to amend his pleadings, if appropriate, in order to consider whether any reason existed which might have served to toll the limitation period therein set forth. See, *e.g.*, *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313, 335 N.E.2d 448.

requirement that upon receiving notice required by statute a hospital shall allow the voluntary admittee to leave without subjecting him to what may prove to be unnecessary treatment, an ingestion of drugs, pain, suffering, and mental anguish. At the same time he may be forced to pay for such unnecessary consequences of failure by the hospital to release him upon request. In enacting section 15, which requires "° ° ° all civil actions not otherwise provided for ° ° °, [to] be commenced within 5 years next after the cause of action accrued," the legislature contemplated the necessity of providing for an exigency such as the one arising in the instant case.

Defendants observe that "the only mention of a private claim in the entire ° ° ° [Mental Health Code] is in section 12—13, wherein the State Attorney General is instructed to defend ° ° °" all actions and proceedings against any employee or agent of the Department of Mental Health arising out of their official duties. Included therein, among other things, is a suit filed for detention of any individual under the Act, brought in any of the courts of this State. From this provision defendants appear to infer that private actions, such as that pursued by plaintiff in this case, must be limited to those which are sought against the Department of Mental Health, its agents and employees, but are prohibited when pursued by individuals against private hospitals or their employees and agents. We see little support in the law for such proscription. Indeed, such dichotomous treatment would seem to carry with it the taint of unequal protection and unconstitutional limitation. To the contrary, section 12—13 appears to support plaintiff's position that a private civil action was within the realm of legislative contemplation in the enactment of the Mental Health Code.

Finally, defendants contend that because the Mental Health Code provides that persons who unlawfully detain an individual contrary to the provisions of the Act commit a Class A misdemeanor (Ill. Rev. Stat. 1975, ch. 91½, par. 15—1), the civil action pursued by plaintiff is subject to the two-year statute of limitations under section 14 of the Limitations Act. An examination of that section reveals, however, that it applies where the action is one seeking a statutory penalty. Here, plaintiff seeks no statutory penalty under section 15—1. Therefore, the cases cited by defendants, *M.H. Vestal Co. v. Robertson* (1917), 277 Ill. 425, 115 N.E. 629; *Superior Laundry & Linen Supply Co. v. Edmanson-Bock Caterers, Inc.* (1956), 11 Ill. App. 2d 132, 136 N.E.2d 610; and *Mueller v. Bittle*, each of which was concerned with an action to recover a statutory penalty, are inapposite to the issues herein presented.

We have carefully examined the remaining subpoints raised by the

parties and find them to be repetitive or otherwise without merit insofar as the dispositive issues herein are concerned.

■■ For the foregoing reasons we hold that plaintiff's cause of action is not barred by the passage of time. The order dismissing the complaint must be reversed and remanded with directions to reinstate the cause of action.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.